In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-1837

DEBBIE A. STAGE,

*Plaintiff-Appellant,*

*v.*

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:13–CV–414–JVB — **Joseph S. Van Bokkelen**, *Judge.*

ARGUED NOVEMBER 17, 2015 — DECIDED FEBRUARY 9, 2016

Before FLAUM, EASTERBROOK, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Debbie Stage appeals the district court's judgment upholding the denial of her application for supplemental security income, disability insurance benefits, and disabled widow's benefits. Stage was 56 years old at the time of the decision. She suffers from chronic back and hip problems exacerbated by obesity, caused in turn by hypothy-

roidism. She argues that the administrative law judge erred by discounting significant new evidence she submitted after an agency doctor had reviewed her medical records, by giving little weight to her treating physician's opinion, by discrediting her testimony about her pain without adequate support, and by overstating her residual functional capacity. We agree with Stage that the ALJ's evaluation of her medical evidence was unreasonable and that substantial evidence does not support his finding that she remained capable of performing light work. We reverse the district court's judgment and remand this case to the agency for further consideration.

Stage's back problems began when she slipped two discs while working in a factory in 1985. She continued working, though, and her pain became more severe over the years. By 2007, she had been diagnosed with arthritis in her back, hips, left leg, and shoulders, as well as spinal degeneration, a tear in a disc joint, and mild degenerative disc disease. Stage is 5′6″ tall and at the time of the ALJ's decision weighed over 200 pounds, giving her a body mass index of about 33, indicating obesity. Stage also suffered from a host of other health problems, including hyperlipidemia, hypertension, and hypothyroidism—a condition that has made her obesity especially difficult to control.

Stage applied for benefits claiming that debilitating back and hip pain rendered her unable to work after October 2009. Her last job was general kitchen work at a residential-care facility. Before that she had worked as a cook, bartender, and factory laborer. Stage's extensive medical records show that she began seeking frequent treatment for worsening hip and back pain late in 2010. X-rays taken by a family

practitioner revealed reduced blood flow to her legs and feet due to calcification, as well as spinal disc narrowing and joint narrowing. The doctor noted that Stage walked with an antalgic gait (compensating for pain while walking) and experienced muscle spasms. She was referred to a pain-management clinic. An anesthesiologist specializing in spinal pain took an MRI and diagnosed a lumbar disc bulge, annular tear, and degenerative disc disease. The doctor recommended an epidural steroid injection for pain relief. Stage declined the injection because she had experienced no relief from an earlier one.

During monthly visits in 2011 to her primary care physician, Dr. Fernando Rivera, Stage consistently complained of debilitating pain. She was prescribed numerous pain medications, including Percocet, Vicodin, Norco, Tylenol–Codeine #3, Flexeril, Mobic, tramadol, Ultram, and Valium. She was also prescribed a back brace and a shower chair because she was unable to stand while bathing.

In March 2011, a consulting physician for the agency examined Stage. He noted that she arrived wearing a prescribed back brace and that she complained she could not stand or walk for any length of time due to constant pain. He observed that she walked with a hunch, had a restricted range of motion in her lumbar region, could not stoop or squat, had difficulty walking heel-to-toe, and had difficulty both rising from a sitting position and getting off the examination table. Her straight-leg test was positive, indicating radiating back pain.

That same month, a non-examining physician for the agency reviewed Stage's medical records and completed a Physical Residual Functional Capacity Assessment. This

doctor concluded that Stage could occasionally lift or carry 20 pounds, frequently carry 10 pounds, and sit, stand, or walk for six hours in an eight-hour work day. He found Stage's claims of pain only partially credible.

Seven months later, after an acute flare-up of pain led to an emergency room visit and prescriptions for oxycodone and Valium, Stage visited Dr. Richard Oni, a board-certified orthopedic surgeon. She complained that the worsening pain prevented her from doing normal daily activities. Dr. Oni spent 80 minutes examining Stage. He reported a severe restriction of the range of motion of her hip, a strongly positive "Patrick's sign" (a test for pain in the hip), moderately severe degenerative arthritis, degenerative disc disease, a shortening of her left leg due to her antalgic gait, and the other spinal problems already diagnosed by Dr. Rivera. Dr. Oni ordered new MRIs that revealed degenerative changes in her spine.

Dr. Oni wrote Dr. Rivera that Stage needed a total left hip replacement "because of disabling symptoms." He also prescribed additional pain medication. In April 2012, Dr. Rivera completed a Physical Residual Functional Capacity Questionnaire for Stage's application for benefits. He included the diagnoses from Dr. Oni listed above. He also described Stage's pain as severe, constant, and radiating down her legs, and he opined that she was not capable of working even low-stress jobs because of her pain and its effects on her concentration. He doubted that Stage could walk a single city block without resting, and he added that she could sit or stand continuously for only five minutes at a time, after which she should lie down while elevating her legs on two pillows. He also said that she could sit, stand, or walk for

less than two hours in a workday, that she should walk with a cane, and that she should never lift or carry anything.

The following month Stage testified at a hearing before the ALJ that her pain made it difficult to carry even her five-pound purse, that she could walk on average only 30 to 40 feet before needing to take a break, and that she could stand for at most five minutes at a time. She said that her two teenage grandchildren and her sister did all housework and chores other than washing the dishes, which she did while sitting, taking hours to complete. Stage said that she also had to sit while showering and riding a motorized cart for grocery shopping, relying on her grandchildren to fetch items from the shelves. She described her arthritic pain as constant and said it prevented her from engaging in almost all the activities that she formerly enjoyed.

At the hearing a vocational expert testified about the jobs available to a hypothetical person of Stage's age, education, work experience, and physical capabilities. According to the expert, if such a person remained capable of light work, she could perform Stage's past jobs as a bartender, cook, or waitress (but not as she performed them in the past), and could perform light, unskilled jobs such as a production assembler, small-parts assembler, or electronics worker. (Light work, as defined by the agency, requires the ability to stand or walk for six hours a day, to lift or carry up to 20 pounds, to stoop and crouch, and occasionally to climb ramps or stairs.) However, a person of Stage's age, education, and work experience limited to sedentary work (standing or walking for only two hours a day) would be deemed disabled under the agency's so-called Grids. See 20 C.F.R. Pt. 404, Subpt. P, App. 2.

In his decision denying Stage's claim for benefits, the ALJ applied the standard five-step analysis for determining whether a person is disabled within the meaning of the Social Security Act. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). He determined at step one that Stage had not engaged in substantial gainful activity since the alleged onset date. At step two, her combination of impairments—lumbar spine degenerative disc disease, obesity, and osteoarthritis in the left hip—constituted severe impairments, meaning that they significantly limited her ability to work. At step three the ALJ found that these impairments did not meet or equal any listed criteria for an automatic finding of disability. At step four the ALJ determined Stage's residual functional capacity, meaning ability to work despite her health problems. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ found that Stage was still capable of performing light work, which would require her to stand and walk for six hours in an eight-hour work day. Based on this residual functional capacity and Stage's age and education, the ALJ concluded at step five that she could work as a production assembler, small-parts assembler, or electronics worker and therefore was not disabled.

The ALJ gave "little weight" to Dr. Rivera's opinion, whose report he found "internally inconsistent and not supported by his own treatment notes or the overall record." The ALJ further found Stage's testimony "not credible to the extent [that her symptoms] are inconsistent" with this residual functional capacity because, he wrote, no medical evidence proved that her condition had worsened since 2007, and she did not begin seeking pain treatment until a year after her alleged onset date. The ALJ wrote that Stage's choice to forgo "epidural injections as well as sur-

gery … suggests the claimant's symptoms may not be as severe as alleged." The Appeals Council denied review, and the district court upheld the denial of benefits.

Stage's strongest argument on appeal is that Dr. Oni's report, which diagnosed significant hip deformity, a restricted range of motion, and the need for a total left hip replacement, changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician and by evaluating himself the significance of Dr. Oni's report. We agree. See *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding where ALJ uncritically accepted vague non-examining physician's report and failed to submit new MRI to medical scrutiny, which "she should have done since it was new and potentially decisive medical evidence").

Dr. Oni's evaluation contained significant, new, and potentially decisive findings—the need for a hip replacement and evidence of further spinal degeneration. They could reasonably change the reviewing physician's opinion. Instead of consulting a physician, though, the ALJ evaluated the MRIs and recommendation himself. He decided that they were "similar" to existing evidence. "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." See *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). The ALJ here was not qualified or authorized to determine that Stage's need for a hip replacement would not have affected her supposed ability to stand and walk for six hours a day, upon which the ALJ's denial of benefits depended.

The ALJ erred similarly by disregarding Stage's need for hip replacement because she had not actually undergone

surgery without exploring why she had not. Recall that she was, after all, applying for supplemental security income. See *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) (ALJ erred by drawing negative inference from SSI claimant's decision not to undergo surgery without inquiring into factors such as ability to pay). Stage's medical file also indicated that she needed to delay surgery until she could arrange for her grandchildren's care. The ALJ used that point to discount her credibility. He inferred that this must mean Stage was capable of greater household activities than she admitted. This analysis is flawed. Stage's need to ensure that two teenagers would be supervised before scheduling major surgery shows nothing about the legitimacy of her claim of pain that was disabling and called for a hip replacement.

We also agree with Stage that the ALJ's assessment of residual functional capacity lacks adequate support in the record. When determining residual functional capacity, the ALJ "must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). Here, the ALJ's analysis of Stage's medical evidence does not logically support his finding that she could perform light work. He did not engage sufficiently with the evidence showing she could not do so. That evidence included: Dr. Rivera's opinion that Stage could not walk a single block and could sit or stand for only five minutes at a time; his opinion that Stage required total hip replacement; the pain specialist's recommendation of epidural injections; the exacerbating effect of Stage's obesity; and the strong narcotics she was taking to treat her pain. See, e.g., *Carradine v. Barnhart*, 360 F.3d 751,

755 (7th Cir. 2004) (physicians' prescription of strong pain medications substantiated claimant's pain allegations).

The ALJ also rejected Stage's testimony about her inability to walk or stand and her severely limited daily activities. He gave the opinion of her treating physician "little weight" because of purported inconsistencies between his questionnaire answers and the objective evidence (splitting hairs unfairly, in our opinion) without substantiating his decision to do so.[1]

A treating physician's opinion is entitled to controlling weight, however, if it is well-supported and not inconsistent with other substantial evidence. An ALJ who does not credit such an opinion must offer good reasons for doing so and must address the appropriate weight to give the opinion. See, e.g., *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). No such analysis was conducted here. It strains credulity to find that a claimant who needed a hip replacement and had to sit while showering and shopping for groceries was capable of standing for six hours a day in a workplace.

Before basing a denial on such a finding, the ALJ should have considered contrary evidence and obtained a medical opinion based on a complete record. *Barrett v. Barnhart*, 355

---

[1] The "inconsistencies" identified by the ALJ are so minor as to be immaterial: Dr. Rivera's treating notes failed to tell Stage to elevate her legs, but the RFC questionnaire said she must do so; the treatment notes did not reflect a prescription for a cane, but the questionnaire said she should use one; Stage testified she could walk no more than 30 to 40 feet without a break, yet Dr. Rivera said she could walk zero blocks; and Dr. Rivera had recommended that she exercise yet said she could sit or stand for only five minutes at a time.

F.3d 1065, 1068 (7th Cir. 2004) ("A great many people who are not grossly obese and do not have arthritic knees find it distinctly uncomfortable to stand for two hours at a time. To suppose that [claimant] could do so day after day on a factory floor borders on the fantastic, but in any event has no evidentiary basis that we can find.").

Finally, we agree with Stage that the ALJ failed to evaluate her claims of pain properly and relied on improper grounds in making his adverse credibility determination. In addition to the problems already noted, the ALJ also erred by basing his adverse credibility determination on two grounds that we have repeatedly held improper: (1) Stage's decision not to undergo invasive and expensive surgery, without inquiring into her reasons for doing so, and (2) her ability to care for herself and her grandchildren. See *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (stating that failure to recognize differences between activities in daily living and a full-time job "is a recurrent, and deplorable, feature" of ALJs' opinions"); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) (remanding where ALJ found claimant's spinal disk disease-related pain allegations not credible based on her ability to care for self and children); *Beardsley*, 758 F.3d at 838 (finding that claimant's limited ability to care for her mother "lend[s] no support to the conclusion that she would be able to spend six hours a day, every day, on her feet working," and rejecting adverse inference drawn from claimant's decision not to undergo surgery, absent exploration of the reason). In doing so, the ALJ overlooked testimony that Stage performed only very limited tasks—with great difficulty—and that her teenage grandchildren and her sister helped her with most tasks of daily living, so that her ability to cope with those tasks at home offered little support for

her ability to handle competitive full-time work at a "light" level of exertion.

Accordingly, we VACATE the judgment of the district court and REMAND the case to the agency for further proceedings consistent with this opinion. On remand, the ALJ should obtain medical testimony on the impact of Stage's need for a hip replacement on her ability to stand for hours at a time, and should give reasoned assessments of her credibility, her residual functional capacity, and the proper weight to accord her treating physician's opinion.