NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 15, 2020
Decided February 2, 2021

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 20-1651

| | |
|---|---|
| CHERYL R. KEMPLEN,<br>    *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Southern District of Illinois. |
| *v.* | No. 19-cv-549-DGW |
| ANDREW M. SAUL<br>Commissioner of Social Security,<br>    *Defendant-Appellee.* | Donald G. Wilkerson,<br>*Magistrate Judge.* |

**O R D E R**

Cheryl Kemplen challenges the denial of her application for Social Security disability benefits. She suffers from degenerative disc disease and osteoarthritis which limit her ability to use her hands for reaching, handling, and fingering. An administrative law judge found her not disabled, determining that she could engage in those activities frequently. In reaching that decision, the ALJ gave significant weight to a state agency consultant's opinion from early 2016. Kemplen asserts on appeal that her condition deteriorated after the consultant's opinion, and that the ALJ should have ordered the consultant to review new evidence. We agree with Kemplen and remand for further agency proceedings.

**Background**

Kemplen, now 50 years old, suffers from chronic neck and back pain. Her last job was as a commercial janitor, but she lost that position when the company for which she worked was purchased. She applied for disability benefits in September 2015, saying she could not work because of bone spurs on her back, chronic neck and back pain, high blood pressure, anxiety, muscle spasms, and high cholesterol. Kemplen's application for disability benefits was initially rejected in late 2015. She sought reconsideration of that decision based on "a lot of pain" she was experiencing in her neck, back, and legs, and submitted a magnetic resonance image she received in December 2015 which showed mild degenerative changes in her cervical spine and "[m]ild desiccation and disc space narrowing in one space" in her lumbar spine.

While Kemplen's application was being reconsidered, a state agency physician, Calixto Aquino, reviewed Kemplen's records. Dr. Aquino supplied what would turn out to be the only medical opinion in the case to address how Kemplen's impairments affected her occupational functioning. In a January 2016 report, Dr. Aquino opined on Kemplen's exertional limitations, including her ability to lift and walk. Of significance for this case, Dr. Aquino did not opine on any of Kemplen's manipulative limitations, such as her ability to reach, handle, or finger.

In February 2016, the Social Security Administration denied her application for reconsideration. By the time it made its ruling, the agency had Dr. Aquino's consulting opinion for review, which stated that Kemplen could still carry up to 20 pounds and had "light" exertional limitations. The opinion did not mention the December 2015 MRI.

Kemplen's condition deteriorated in 2017. That February, a nurse practitioner described her as "in tears over radicular lower back pain; pain barely controlled with gabapentin and ibuprofen … cannot stand for prolonged length of time and can't even help husband around the house." In July, Kemplen went to a local emergency room and reported to a doctor that she could not straighten her arm or pick up any amount of weight without pain shooting into her fingers. The treating physician ordered x-rays, which showed mild to moderate osteoarthritis in her left elbow and the first metacarpophalangeal joint of the left hand. An MRI later that month revealed "mild degenerative changes" in the cervical spine.

Because this case turns on the significance of what happened in September 2017, we spend some time relaying the events of that month. First, Kemplen saw Dr. Ahmed Mohammed, a spine specialist, who noted Kemplen's complaints of back, neck, and

shoulder pain and reviewed both the 2015 and 2017 MRI evidence. Dr. Mohammed concluded that the radiographic findings were "compatible with generalized bone pain in her neck and lower back and shoulder pain in the setting of mild degenerative spondylosis of the cervical and lumbar spine." Dr. Mohammed also noted that, though the MRIs showed left L4-L5 foraminal stenosis, there were no other areas of stenosis shown. Next, at the end of September 2017, Kemplen went to physical therapy. That PT report referred to an MRI of Kemplen's neck, noting that "[t]he MD said she needs neck surgery but she does not want it at this time." The report explained that Kemplen could not "grip" or "carry" heavy things and discussed "skilled care." Her expressed goals were to turn a doorknob and open a jar without increased elbow pain. On that same day, Kemplen received more X-rays of her left hand which showed a fracture of her pinky finger. She experienced soft-tissue swelling in that hand and mild osteoarthritic changes.

At her hearing before the ALJ in October 2017, Kemplen testified to her physical limitations. She reported difficulties raising her arms and twisting her neck without pain, numbness and tingling in her legs and feet, back-spasm pain, and postural dizziness. Kemplen also testified that her problems had worsened over the past year and that she recently had begun using a cane. She said she had trouble affording the co-pays. She also said her strength had weakened, and she had trouble opening things, like jars. Kemplen said that at most, she could sit for only one hour, and she preferred to sit in a reclined position.

The ALJ then asked a vocational expert a series of hypotheticals for an individual of Kemplen's age, education, and work background. One hypothetical (the one the ALJ settled on) concerned an individual who could stand and walk for two hours out of an eight-hour workday and could "frequently but not constantly handle and finger bilaterally." The VE testified that this individual could work as a general office clerk, call-out operator, and information clerk (specifically a "telephone quotation clerk"), and as a weight tester in production-inspection work.

The ALJ concluded that Kemplen was not disabled. Applying the required five-step analysis, *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), the ALJ determined that Kemplen had not engaged in substantial gainful activity during the relevant time period (Step 1); she had severe impairments—degenerative disc disease, osteoarthritis, obesity, fibromyalgia, left-elbow lateral epicondylitis ("tennis elbow"), and diabetes (Step 2); none of those impairments equaled a listed impairment (Step 3); she retained the residual functional capacity to perform "light work" and could "frequently, but not

constantly, handle and finger bilaterally" (Step 4); and she could not perform her past relevant work but could work as a call-out operator, telephone quotation clerk, or weight tester (Step 5).

In reaching this determination, the ALJ found that Kemplen's assertions as to the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent" with the evidence in the record. The ALJ gave "significant weight" to the views of the state agency's medical examiner, whose opinion he deemed "not inconsistent" with the more recent 2017 evidence, including X-rays and MRI results. Because the ALJ's discussion of this evidence lies at the heart of this appeal, we quote the ALJ's language in its entirety:

> As for the opinion evidence, the State agency's medical examiner, they [sic] opined that the claimant was capable of light work with additional postural and environmental limitations. Evidence received at the hearing level indicated that the claimant had not developed significantly greater limitations than for which this opinion accounted. There were some abnormal findings, but overall these findings were not inconsistent with the State agency opinion with the exception that the additional manipulative limitations take into account a greater degree of her subjective allegations as supported by the subsequent evidence. However, the finding of additional limitations was not supported. Additionally, this opinion was formed by a medical professional who viewed large amounts of the record, had program knowledge, and the record contained no other medical opinions.

The Appeals Council denied Kemplen's request for review, making the ALJ's decision the final decision of the Commissioner. 20 C.F.R. §§ 404.955, 404.981.

Kemplen sought judicial review, asserting the ALJ made findings about the most recent medical evidence concerning her arms and hands—that she could frequently reach, handle, and use her fingers—without having a state agency consultant review it. The district court found no error, determining that "the medical records presented after Dr. Aquino's review were not objective evidence of a dramatic nature which would require further review by a medical professional." In the court's judgment, the additional records concerned a single X-ray that revealed "no acute abnormality or fracture," and Kemplen was asking the court merely to reweigh evidence, a task the

court could not do. Otherwise the court found the ALJ's findings supported by substantial evidence.

## Analysis

On appeal, Kemplen asserts the ALJ impermissibly "played doctor" by not seeking an updated medical opinion interpreting the 2017 X-rays and MRI results that post-dated Dr. Aquino's opinion. Kemplen believes the ALJ substituted his own opinion when concluding that this evidence did not alter his assessment of her ability to reach, handle, and finger on a continuous basis. For its part, the agency maintains that the July 2017 MRI did not show consequential changes to Kemplen's condition that required a new opinion.

This court has stated repeatedly that an ALJ may not "play[ ] doctor and interpret new and potentially decisive medical evidence without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (internal quotation marks omitted); *see also Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018)*; Akin v. Berryhill*, 887 F.3d 314, 317–18 (7th Cir. 2018); *Moreno v Berryhill*, 822 F.3d 722, 728 (7th Cir. 2018). Now not all new evidence will necessitate a remand. As the agency notes, in two unpublished cases, *Keys v. Berryhill*, 679 F. App'x 477 (7th Cir. 2017), and *Olsen v. Colvin*, 551 F. App'x 868 (7th Cir. 2014), this court upheld the denial of benefits when MRI evidence post-dating the state agency consultant's report showed only mild changes in the claimants' respective conditions. The issue, then, comes down to whether the new information "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician and by evaluating himself the significance of [the subsequent] report," *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016), or whether the updated information was minor enough that the ALJ did not need to seek a second opinion.

Although a close question, we conclude that the ALJ erred by not soliciting an updated medical opinion interpreting Kemplen's July and September 2017 X-rays. The results of those X-rays are inconsistent with findings in the ALJ's opinion. A physician who saw Kemplen in July 2017 in an emergency room reported that whenever Kemplen tried to lift any weight she experienced shooting pain. The X-rays show Kemplen was experiencing osteoarthritic changes in her elbow and her left hand, along with soft-tissue swelling in her hand and a fractured left pinky finger. All these conditions could conceivably affect her ability to reach, handle, and finger on a continuous basis. This report contrasts markedly with Dr. Aquino's January 2016 report—given significant

weight by the ALJ—which opined that Kemplen could lift up to 20 pounds (and 10 pounds regularly).

The X-rays are also corroborated by other medical evidence from 2017, including the nurse practitioner's report of Kemplen's "tears" from lower-back pain, and a PT report noting Kemplen's inability to "grip" or "carry" heavy things, or even to turn a doorknob or open a jar without elbow pain. The ALJ's statement that the findings at the hearing level were "not inconsistent with the State agency opinion" is simply not correct. Even more than disregarding this evidence, the ALJ did not identify a basis for why Kemplen could tolerate "frequent" handling, as the agency conceded at oral argument before this court.

We are not persuaded by the agency's counterarguments. First, the agency insists that the burden of proving the extent of workplace limitations rests with Kemplen, the claimant, but the agency is only partially correct on this. The three decisions the agency relies on to argue that the claimant bears the burden—*Keys*; *Olsen*; and *Eichstadt v. Astrue*, 534 F.3d 663 (7th Cir. 2008)—do not convince us. First, *Eichstadt* stated the limited conclusion that "claimant bears the burden of producing medical evidence that supports her claims of disability." 534 F.3d at 668. Subsequent decisions have made clear that the burden is to produce evidence, not opinions. *See, e.g., Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011) ("If the ALJ found this evidence insufficient, it was her responsibility to recognize the need for additional medical evaluations.")

Nor are we persuaded by the agency's argument that *Keys* and *Olsen* "clarify that reviewing courts should hold claimants' to their burden to prove their limitations." The cases are unpublished, which we have warned against relying on because they are "more summaries than fully reasoned explanations" and "[w]e prefer for present purposes to stick to more authoritative sources." *Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 833 (7th Cir. 2020). Further, this court's decision in *Scott* is also consistent with its more recent opinion in *McHenry*, which ordered a remand in light of the ALJ's failure to obtain a medical opinion without reference to whether the claimant could or should have sought opinion evidence. 911 F.3d at 871. These decisions considered together provide the following standard: the ALJ must seek an additional medical opinion if there is potential decisive evidence that postdates the state agency consultant's opinion. *See also Akin v. Berryhill*, 887 F.3d 314, 317–18 (7th Cir. 2018). That standard was not met here.

We now address the agency's fact-based arguments. First, the agency contends no further expert opinion was necessary because Dr. Mohammed did not report much

change with respect to the cervical spine. This point makes this a close case. Ultimately, however, Dr. Mohammed's observations do not defeat Kemplen's arguments for two reasons: (1) Dr. Mohammed's notes do not mention anything about Kemplen's emergency room visits and X-ray, and (2) the parties' differing positions as to what the MRIs depict highlight the need for someone with expertise to opine on what these MRIs, taken together with the X-rays, show about Kemplen's ability to use her hands and fingers.

Finally, the agency points to an error in Kemplen's opening brief, noting that Kemplen confused the results of the MRIs from December 2015 and July 2017 when she wrote that the July 2017 MRI "for the first time demonstrated 'increased signal along with the left dorsal aspect of the spinal cord' and 'slight[] abut[ment of] the anterior aspect of the spinal cord' at C4-C5 suggestive of compression of the [spinal] cord." Kemplen did commit this error. But it is harmless because the 2017 MRI was only one piece of new evidence Kemplen introduced at the hearing level; she also introduced X-ray results confirming a fractured finger and soft-tissue swelling, diagnoses left unaddressed by the agency here on appeal.

For these reasons, we VACATE the judgment of the district court and REMAND for further proceedings.