In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1954

ALEJANDRO MORENO,

*Plaintiff-Appellant,*

*v.*

NANCY BERRYHILL,
Acting Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cv-11168 — **Sidney I. Schenkier**, *Magistrate Judge.*

ARGUED DECEMBER 12, 2017 — DECIDED FEBRUARY 16, 2018

Before BAUER, RIPPLE, and SYKES, *Circuit Judges.*

PER CURIAM. Alejandro Moreno appeals the order of the district court upholding the Social Security Administration's denial of his applications for Supplemental Security Income and Disability Insurance Benefits. Mr. Moreno contends that, among other shortcomings in the Administrative Law Judge's ("ALJ") determination, he improperly relied on an outdated mental-health assessment and failed to incorporate all of

Mr. Moreno's limitations when posing the hypothetical to the vocational expert. We agree that the record contains new and significant evidence that could have affected Mr. Moreno's mental-health assessment. We also agree that the ALJ's hypothetical to the vocational expert failed to include Mr. Moreno's limitations with respect to concentration, persistence, and pace. Accordingly, we remand the matter to the agency for further proceedings.

# I

## BACKGROUND

### A. Mr. Moreno's Condition

Mr. Moreno's misfortunes began in February 2006 when he fell off scaffolding and landed on his back while taping drywall. He sought treatment from an orthopedist, who found a soft tissue injury but no signs of fracture. Later testing showed improvements in Mr. Moreno's condition, but he reported that he still felt significant pain. A follow-up diagnostic test revealed acute lumbar radiculopathy—lower back pain caused by compression, inflammation and/or injury to a spinal nerve root. In addition to this condition, Mr. Moreno also is diabetic, has high blood pressure, and is obese.

Beginning in April, Mr. Moreno sought treatment for his chronic pain from clinical psychologist Dr. Enrique Gonzalez. Dr. Gonzalez saw Mr. Moreno "on an almost weekly basis through 2009 for cognitive behavioral therapy."[1] These visits decreased in frequency to monthly between 2010 and the first

---

[1] A.R. at 827.

half of 2011; however, for the remainder of 2011 through at least June of 2013, Mr. Moreno saw Dr. Gonzalez on a weekly basis.

In his treatment notes, Dr. Gonzalez reported that Mr. Moreno manifested, among other symptoms, a depressed mood, irritability, memory difficulties, and an inability to concentrate. Critical to our analysis, Dr. Gonzalez documented an ongoing inability to sleep, including times when Mr. Moreno would go days without sleep.[2] Dr. Gonzalez also addressed Mr. Moreno's difficulties interacting with the public and with his family, specifically outbursts of anger precipitated by feelings that others were taking advantage of him.[3] Dr. Gonzalez observed fluctuations in Mr. Moreno's mood and behavior over time, including some periods of improvement; for instance, Dr. Gonzalez reported improved mood when Mr. Moreno had scheduled activities with his daughter and family.[4]

From March 2008 through November 2013, Mr. Moreno also saw a Dr. Walter Pedemonte on a monthly basis for psychiatric medication management. Dr. Pedemonte observed Mr. Moreno suffered from the following symptoms in March 2008: "depressed mood, anxious affect, poor immediate and recent memory, fair remote memory, poor attention, [and] poor concentration."[5] He diagnosed Mr. Moreno with major depressive disorder and, over the years, prescribed

---

[2] *Id.* at 639, 1947–48, 1996–98.

[3] *Id.* at 644, 648, 1994, 1996.

[4] *See, e.g., id.* at 638.

[5] *Id.* at 829.

Mr. Moreno several medications, and combinations of medi-
cations, to address his condition.

**B. The Administrative Proceedings**

In March 2007, Mr. Moreno filed his applications for Sup-
plemental Security Income and Disability Insurance Benefits.
His claims were denied on initial application and upon recon-
sideration. A hearing was held before an ALJ in December
2009; the ALJ issued a decision denying relief in March 2010.
The Appeals Council denied review, and Mr. Moreno ap-
pealed to the United States District Court for the Northern
District of Illinois.

In the district court, the parties filed an agreed motion to
reverse and remand. The motion requested that, on remand,
the matter "be assigned to a different ALJ, who w[ould] con-
duct a new hearing, and reassess *inter alia* Plaintiff's mental
impairment(s) and the treating physician opinion(s)."[6]

On remand, a different ALJ held a supplemental hearing.
At the February 2014 hearing, Mr. Moreno testified regarding
his mental health. He described a significant number of psy-
chological concerns, including difficulty focusing, remember-
ing, and interacting with others. He recounted that his wife
administers his medication and keeps track of his physicians'
appointments because he struggles to remember things. He
also reported that he tried to take English classes but had trou-
ble concentrating. Mr. Moreno also testified, as he did in the
original hearing, that people "bother[]" him, [7] so he avoided

---

[6] R.34 (1:11-cv-01771).

[7] A.R. at 874.

going to crowded church services and using public transportation.

In addition to the hearing testimony and the notes of Drs. Gonzalez and Pedemonte, the second ALJ also looked at Mr. Moreno's mental-health records, examinations, and assessments that predated the hearing before the first ALJ. Among these were the diagnosis and notes of Dr. Herman Langner, who examined Mr. Moreno in 2007 and diagnosed him with depression. The ALJ also considered the review of Mr. Moreno's mental-health records conducted by psychologist Margaret Wharton in 2007. In her assessment of Mr. Moreno's residual functional capacity, Dr. Wharton observed that Mr. Moreno manifested a "[d]isturbance of mood" evidenced by "[d]ecreased energy," "[f]eelings of guilt or worthlessness," and "[d]ifficulty concentrating or thinking."[8] Under functional limitations, Dr. Wharton noted that Mr. Moreno was only mildly limited in activities of daily life and in social functioning, but he was moderately limited in maintaining concentration, persistence, and pace.[9] Her summary conclusions described Mr. Moreno as not significantly limited in "[t]he ability to carry out very short and simple instructions"; "[t]he ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; "[t]he ability to work in coordination with or proximity to others without being distracted by them"; "[t]he

---

[8] *Id.* at 411.

[9] *Id*. at 418.

ability to make simple work-related decisions"; and "[t]he ability to interact appropriately with the general public."[10]

The ALJ then used this information to pose a hypothetical question to a vocational expert regarding Mr. Moreno's employability. Specifically, at the second hearing, the ALJ described a hypothetical individual with Mr. Moreno's physical limitations. In addition to physical limitations, the ALJ included in his question to the vocational expert that the hypothetical "individual can understand, remember, and carry out simple work instructions … and exercise simple work place judgments. And further, the individual would be limited to routine work … [with] no more than occasional changes in the work setting."[11] Finally, the ALJ required that the individual could have "no more than occasional interaction with the public."[12] Given these restrictions, the vocational expert opined that there were still a number of jobs that Mr. Moreno could perform, including that of an assembler, an inspector, a checker, and a hand packer.

Following the hearing, the ALJ issued a written opinion in which he reviewed the evidence, applied the standard five-step analysis, *see* 20 C.F.R. § 404.1520(a), and concluded that Mr. Moreno was not disabled. At step one, the ALJ determined that Mr. Moreno had not engaged in substantial gainful activity since his alleged onset date in February 2006. At step two, the ALJ evaluated Mr. Moreno's physical and mental conditions, and concluded that he was suffering from severe

---

[10] *Id*. at 422–23.

[11] *Id*. at 921–22.

[12] *Id*. at 922.

impairments—lumbar disc disease, myofascial pain syndrome, left knee pain, obesity, and depression—within the meaning of the Act and regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c). But at step three the ALJ determined that these impairments, individually or in combination, do not meet a listing for presumptive disability. Applying the "special technique," 20 C.F.R. §§ 404.1520a, 416.920a—the method that considers "pertinent symptoms, signs, and laboratory findings" to determine whether the claimant suffers from a medically determinable mental impairment—the ALJ concluded that Mr. Moreno's mental impairments do not cause two or more "marked limitations" or one such limitation coupled with repeated episodes of decompensation. Therefore, Mr. Moreno did not satisfy the paragraph B criteria of listings 12.04 and 12.06. He found, however, that Mr. Moreno's mental impairments do cause "moderate" restrictions in social functioning and concentration, persistence, or pace, as well as "mild" restrictions in his activities of daily living.[13]

At step four the ALJ found that Mr. Moreno could not perform his past work as a drywall taper, but at step five he concluded that Mr. Moreno could "perform light work" with some restrictions.[14] In assessing Mr. Moreno's residual functional capacity, the ALJ afforded the opinion of Dr. Wharton great weight, explaining that Dr. Wharton's analysis was "consistent with the longitudinal evidence of record."[15] The ALJ also reviewed the notes of Mr. Moreno's treating psy-

---

[13] *See id*. at 814–15.

[14] *Id*. at 816.

[15] *Id*. at 831.

chologist, Dr. Gonzalez, who documented fluctuating symptoms of depression, suicidal ideations, low motivation, and irritability.[16] But the evidence as a whole, in the ALJ's view, did not support a finding that Mr. Moreno's depression precluded him from engaging in work activity. The ALJ placed particular emphasis on portions of Dr. Gonzalez's treatment notes that showed improvements in Mr. Moreno's mental health during periods of increased activity.

Mr. Moreno appealed to the Appeals Council, which declined review.

## C. District Court Proceedings

Mr. Moreno then sought review in district court, which affirmed the agency's decision. The court first rejected Mr. Moreno's argument that the ALJ's assessment of residual functional capacity was "flawed because … it did not account for the recommendation of Dr. Wharton that claimant is only

---

[16] The ALJ found Dr. Pedemonte's notes, as well as the other materials that he submitted, unreliable. The ALJ noted that, according to Dr. Pedemonte's notes, Mr. Moreno's mental status exam remained completely unchanged, yet Mr. Moreno reported vastly different moods during his visits, and his medications were altered. *Id*. at 828. Similarly, Dr. Pedemonte's source statement, completed on October 31, 2009, reported "clinical findings of psychomotor retardation, hopelessness and helplessness"; however, the ALJ gave "little weight" to this report because it was inconsistent with Dr. Pedemonte's treatment records. *Id*. at 832. Finally, in a letter Dr. Pedemonte submitted in 2011, he reported treating Mr. Moreno for "major depression chronic severe recurrent psychotic features." *Id*. at 834. The ALJ observed, however, that the diagnosis of psychotic features is "not supported by Dr. Pedemonte's own treatment records." *Id*.

capable of performing one-two step jobs."[17] The court concluded that the record as a whole adequately supported the ALJ's determination that Mr. Moreno could carry out "simple work instructions."[18] The district court also was unpersuaded by Mr. Moreno's argument that the ALJ's residual functional capacity assessment did not account for Mr. Moreno's limitations in concentration, persistence, and pace: "the ALJ's hypothetical to the [vocational expert] adequately addressed Mr. Moreno's specific deficiencies" even if the words concentration, persistence, and pace were not used.[19] The district court further determined that the ALJ was not required to seek an updated mental-health evaluation because the treatment notes that postdated Dr. Wharton's assessment did not show a significant change in Mr. Moreno's condition that would have caused Dr. Wharton to revise her conclusions. Finally, the district court found that the ALJ had "adequately considered the combined effects of Mr. Moreno's physical impairments, mental health impairments, and obesity when determining his [residual functional capacity]."[20]

Mr. Moreno timely appealed.

---

[17] R.26 (1:15-cv-11168) at 14.

[18] *Id*.

[19] *Id*. at 18.

[20] *Id*. at 22.

## II

## DISCUSSION

Mr. Moreno renews on appeal the arguments made to the district court. We conclude that two of his contentions are meritorious—that the ALJ improperly relied on an outdated mental-health assessment and that the ALJ's hypothetical to the vocational expert failed to incorporate all of Mr. Moreno's limitations.

### A. Mental-Health Evaluation

Mr. Moreno's primary argument on appeal is that the ALJ improperly afforded great weight to the mental-health evaluation of Dr. Wharton because the copious evidence submitted after her initial assessment could have altered her conclusions. The Commissioner, however, submits that the treatment notes of Drs. Gonzalez and Pedemonte would not have changed Dr. Wharton's opinion because, as the ALJ concluded, the notes indicated improvement in Mr. Moreno's mental health, not deterioration.

Because the Appeals Council denied review, we evaluate the ALJ's supplemental decision as the final word of the Commissioner of Social Security. *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). We must uphold the ALJ's decision if it is supported by "substantial evidence, that is, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding after ALJ failed to submit new MRI to medical scrutiny). Here, a comparison between Dr. Wharton's assessment and Dr. Gonzalez's treatment notes reveal significant and new developments in Mr. Moreno's mental health that could have affected Dr. Wharton's assessment. We focus on those aspects of Dr. Wharton's assessment where the contrast is most stark.

Turning first to "Affective Disorders," the form completed by Dr. Wharton asks the evaluator to indicate if the claimant has "[d]epressive syndrome characterized by at least four" of the listed symptoms.[21] Dr. Wharton did not check this diagnosis because her evaluation suggested a presence of only three of the nine symptoms: "[d]ecreased energy," "[f]eelings of guilt or worthlessness," and "[d]ifficulty concentrating or thinking."[22] Critically, Dr. Wharton concluded that Mr. Moreno did not exhibit "[s]leep disturbance" or "[t]houghts of suicide."[23] Dr. Gonzalez's treatment notes, however, indicate that, for at least some period of time after Dr. Wharton's assessment, Mr. Moreno experienced both of

---

[21] A.R. at 411.

[22] *Id*.

[23] *Id*.

these symptoms. Specifically, on February 17, 2010, Dr. Gonzalez noted that Mr. Moreno "has not slept for three days," and on March 24, 2010, that Mr. Moreno "continues to report sleep disturbance."[24] Sleep issues arose again from December 2011 through March 2012.[25] Moreover, at different times in his treatment, Mr. Moreno reported to Dr. Gonzalez that he was "capable of having" suicidal thoughts, was having suicidal thoughts, or was having "negative thoughts related to … the purpose of living."[26] Because it bears directly on criteria that Dr. Wharton considered, this evidence certainly could have altered her conclusion regarding the existence and severity of Mr. Moreno's affective disorder.

Similarly, with respect to Mr. Moreno's functional limitations, Dr. Wharton assessed only mild limitations in social functioning. Her consultant's notes reveal that Mr. Moreno did "not like to be around others, as people bother him."[27] Dr. Gonzalez's notes reveal something more serious than a general dislike of people—"anger outbursts in public places,"[28] especially when he felt "that people [we]re taking advantage of him."[29] This documented history of aggressive behavior could have "changed the picture so much" that Dr. Wharton would have concluded that Mr. Moreno was

---

[24] *Id*. at 1947–48.

[25] *See id*. at 1994, 1996–98.

[26] *See id*. at 645, 1946, 1997.

[27] *Id*. at 420.

[28] *Id*. at 1994.

[29] *Id*. at 1996.

more than mildly limited in social functioning. *Stage*, 812 F.3d at 1125.

We cannot accept the agency's argument that the newer mental-health records would not have made a difference because they showed improvement. This argument is based on the ALJ's own assessment of the more recent records. We have made clear, however, that ALJs are not qualified to evaluate medical records themselves, but must rely on expert opinions. *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) (remanding because the ALJ improperly "played doctor"); *Goins*, 764 F.3d at 680 (prohibiting ALJs from "playing doctor" by summarizing the results of a medical exam without input from an expert).

The Social Security Administration's ALJs are significantly overburdened with massive caseloads and insufficient resources. We therefore credit the ALJ with authoring a decision that reviewed and considered the lengthy record in detail. Nevertheless, the ALJ was presented with a case that had trekked through a seven-year-long journey, which rendered important aspects of the early mental-health analysis stale. Because the ALJ relied heavily on that stale analysis, we remand to the Agency to conduct a new mental-health assessment on which Mr. Moreno's functional capacity reasonably can be determined.[30]

---

[30] Because our remand requires the ALJ to solicit an updated mental-health evaluation, we do not address Mr. Moreno's other argument concerning Dr. Wharton's assessment—that the ALJ erred in selectively omitting Dr. Wharton's recommendation of one- to two-step work in formulating his hypothetical question to the vocational expert.

**B. Hypothetical Question**

The ALJ's determination is faulty for another reason. Both Dr. Wharton's assessment[31] and Dr. Gonzalez's notes set forth problems with Mr. Moreno becoming distracted, "spacing out," and experiencing difficulties concentrating.[32] These limitations, however, were not included in the hypothetical question posed to the vocational expert.

Our cases require that an ALJ "orient the [vocational expert] to the totality of a claimant's limitations," including "deficiencies of concentration, persistence and pace." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). Moreover, "the most effective way to ensure that the [vocational expert] is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical." *Id*. We, however, have not required the ALJ to use "this specific terminology" in all cases. *Id*. For instance, "[w]e sometimes have assumed a [vocational expert]'s familiarity with a claimant's limitations, despite any gaps in the hypothetical, when the record shows that the [vocational expert] independently reviewed the medical record or heard testimony directly addressing those limitations." *Id*. "We also have let stand an ALJ's hypothetical omitting the terms 'concentration, persistence and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id*.

---

[31] *Id*. at 418 (noting "[m]oderate" "[d]ifficulties in [m]aintaining [c]oncentration, [p]ersistence, or [p]ace").

[32] *See id*. at 648–49, 651, 655 (noting "distractibility"); 660 (noting "spacing out"); 704, 706–07 (noting difficulty concentrating).

Here, the question posed to the vocational expert included that the hypothetical "individual can understand, remember, and carry out simple work instructions," can "exercise simple work place judgments," is "limited to routine work," and can have "no more than occasional changes in the work setting."[33] Clearly, the ALJ's question did not account explicitly for Mr. Moreno's moderate limitations in concentration, persistence, and pace. Moreover, there is no evidence in the record to suggest that the vocational expert engaged in an independent review of Mr. Moreno's medical records.

The Commissioner contends, however, that the question posed by the ALJ adequately accounted for Mr. Moreno's limitations. She asserts that the ALJ's reference to simple work instructions and to routine, low-stress work "reasonably accommodated Moreno's moderate difficulties in concentration, persistence or pace."[34] We cannot accept this argument. "[W]e have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014); *see also Stewart v. Astrue*, 561 F.3d 679, 684–85 (7th Cir. 2009).

"When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record." *Stewart*, 561 F.3d at 684. The question posed to the vocational expert did not

---

[33] A.R. at 921–22.

[34] Appellee's Br. 23.

address Mr. Moreno's documented limitations in concentration, persistence, and pace. As a result, the vocational expert's assessment of the jobs available to Mr. Moreno necessarily is called into doubt, as is the ALJ's conclusion that Mr. Moreno is not disabled under the Social Security Act.

## Conclusion

For the reasons set forth in this opinion, we reverse the judgment of the district court and remand for proceedings consistent with this opinion.

REVERSED and REMANDED