JAMES D. PETERSON District Judge
Plaintiff Todd Courtney seeks judicial review of a final decision of defendant Nancy Berryhill, Acting Commissioner of Social Security, finding him not disabled under the Social Security Act. The administrative law judge (ALJ) found that Courtney had the residual functional capacity to perform sedentary work, with a number of additional limitations. The ALJ adopted the testimony of the vocational expert that a person with these limitations could work as an order clerk, a charge account clerk, or a call out operator, and that all these jobs are available in significant numbers in the national economy.
On appeal, Courtney asserts that the vocational expert's job-number estimates were not based upon reliable methods, that the ALJ failed to consider whether Courtney should be classified as "a person closely approaching advanced age," and that the ALJ erred in finding that Courtney did not meet a listed impairment. The case is scheduled for an oral argument on November 30, 2018, but the court concludes that oral argument is unnecessary. The court concludes that the first two grounds warrant remand.
ANALYSIS
A. Reliability of vocational expert's methodology
Once the ALJ determines that the claimant can no longer perform his past work, the Commissioner has the burden to establish that there are a significant number of jobs in the national economy that someone with the claimant's abilities and limitations can perform. 20 C.F.R. § 416.960(c)(2). Usually, the Commissioner meets this burden by seeking the testimony of a vocational expert. In this case, the vocational expert testified that a person with the limitations found by the ALJ could work as an order clerk, a charge account clerk, or a call out operator, and that respectively, these jobs had 90,000, 48,000, and 33,000 positions nationwide. R. 70. The ALJ relied upon these estimates to find that Courtney could perform available work and was not disabled. R. 24. Courtney contends that the method used by the vocational expert to produce these estimates was flawed.
An ALJ's decision must be based on substantial evidence. Summers v. Berryhill , 864 F.3d 523, 526 (7th Cir. 2017). When the decision relies on job estimates, it is based on substantial evidence only if those job estimates are the product of a reliable method. Chavez v. Berryhill , 895 F.3d 962, 968 (7th Cir. 2018). If the claimant challenges the reliability of a vocational expert's opinions, the ALJ is required to make an inquiry similar to that of Federal Rule of Evidence 702 to find out whether the expert's conclusions are reliable. Donahue v. Barnhart , 279 F.3d 441, 446 (7th Cir. 2002).
The Commissioner says that Courtney waived this issue because he did not object to the vocational expert's testimony during the hearing. But the claimant *764 does not need to make a formal objection. Overman v. Astrue , 546 F.3d 456, 464-65 (7th Cir. 2008). He needs only to cross-examine the expert and elicit statements that call into question the reliability of his conclusions. Id. That is what Courtney did here. When Courtney asked the vocational expert to explain the source of his job-number estimates, the expert explained:
It's arrived from a base statistic offered by the U.S. Department of Labor and Bureau Labor Statistics Occupational Employment Statistics. These numbers are national, and that's cross walked through the O*NET System to compile the number of DOT codes assigned to the SCO codes published by the old-same basic numbers as the O*NET has. And then there are certain jobs that would be eliminated due to known elimination of those jobs as being antiquated and/or no longer being performed in the company the country, rather. And many jobs that are assigned a percentage of occurrence, and generally it's an even distribution; however, for some of the more heavily employed areas, there'd be a higher percentage assigned. And a simple multiplication of that percentage times the amount of jobs that are within the particular SCO code to come up with number of jobs for the DOT number.
R. 74-75.
The vocational expert describes a variation of the "equal distribution method," which has been repeatedly criticized by the Court of Appeals for the Seventh Circuit. See Chavez , 895 F.3d at 969 ("We have seen the method applied in other Social Security cases and ... questioned its use in at least four opinions"). Under this method, the expert uses the job titles and job requirements listed in the Dictionary of Occupational Titles (DOT).[1] But because the DOT does not include job-number estimates, the expert seeks that information from an outside source. Unfortunately, it appears that the only reliable statistics are census data for broad categories of jobs, rather than for the job titles used in the DOT. Alaura v. Colvin , 797 F.3d 503, 507 (7th Cir. 2015). So to estimate the number of positions available for an individual job listed in the DOT, the vocational expert simply divides the total number of jobs in a broad category by the number of job titles that fall within that category. Id.
The result is almost certainly inaccurate because it relies on the unfounded assumption that all job titles within a category exist in equal numbers. Chavez , 895 F.3d at 966. "[I]t does not take much knowledge of job markets to know that, while certain jobs may exist in large numbers (for example, a 'pizza baker,' DOT 313.381-014, who 'prepares and bakes pizza pies'), others clearly do not (such as a 'chef de froid,' DOT 313.281-010, who designs 'artistic food arrangements for buffets in formal restaurants' including 'mold[ing] butter into artistic forms')." Id. But an expert using the equal distribution method would determine that these jobs are equally common because they both are within the category of "Chefs and Cooks, Hotels and Restaurants." Id.
The Commissioner contends that the estimates in this case were nonetheless reliable because the expert used the equal distribution method only as a starting point. The Commissioner argues that the expert also excluded "antiquated" jobs and "adjust[ed] the percentage distribution in order to ensure greater accuracy." Dkt. 12, at 19. And indeed, that is what the expert testified. R. 74-75. But this only raises more questions. How did he decide which jobs are antiquated? What was the method that he used to adjust the percentages?
*765 The ALJ's questioning to rehabilitate the vocational expert established, essentially, only that he used his professional judgment in estimating the job numbers. Tweaking the numbers doesn't mean they are accurate. The ALJ should have determined how the expert adjusted his estimates and whether his adjustments were reasonable.
Because the ALJ did not ensure that the expert's job estimates were the product of a reliable method, her decision was not based on substantial evidence. On remand, the ALJ will need to inquire into the vocational expert's methods, whether those methods are reliable, and whether they were accurately applied to the case at hand, before using the expert's conclusions in her analysis.
B. The ALJ's borderline age analysis
Courtney contends that the ALJ erred by failing to conduct what is called a "borderline age analysis." Social security claimants are sorted into different age categories, and different standards apply to the age categories. But regulations state that the agency will "not apply the age categories mechanically in a borderline situation." 20 C.F.R. § 404.1563(b). If a claimant is "within a few days to a few months" of an older age category, and the use of that category would direct a finding of disability, then the ALJ must evaluate "the overall impact of all the factors of [the claimant's] case" to determine whether the older age category should apply. Id. The regulations do not explain what factors the ALJ should consider, but agency manuals state that one factor the ALJ should consider is whether any RFC limitations adversely affect the claimant's occupational base. See HALLEX II-5-3-2; POMS DI 25015.006.
The ALJ issued her decision 18 days before Courtney's fiftieth birthday, the age at which a claimant becomes a "person closely approaching advanced age." 20 C.F.R. § 404.1563(d). The parties agree that if Courtney fell within that age group, then his limitation to sedentary work would have required the ALJ to find him disabled. See 20 C.F.R., Pt. 404, Subpt. P, App. 2, Rule 201.14. No doubt 18 days falls within "a few months." Therefore, the ALJ was required to conduct a borderline age analysis. And because the ALJ found that Courtney had limitations that limited the number of sedentary jobs that he could work, R. 24, the ALJ should have articulated whether those limitations warranted bumping Courtney into the higher age group. See Moody v. Berryhill , 245 F. Supp. 3d 1028, 1035 (C.D. Ill. 2017) (holding that the ALJ must articulate her borderline age analysis); Figueroa v. Astrue , 848 F. Supp. 2d 894, 900 (N.D. Ill. 2012) (same).
On remand, if there is no other basis for finding Courtney disabled, the ALJ will need to conduct a borderline age analysis to determine whether Courtney should have been placed in the higher age category, and if so, on what date the higher age category applied.
C. Whether Courtney met listing 1.02
Courtney also contends that the ALJ erred in finding that he did not meet listing 1.02, which relates to major dysfunctions of joints. 20 C.F.R., Part 404, Subpt. P, App. 1, § 1.02. He argues that the ALJ erred when she relied on the outdated opinions of the state agency medical consultants. The court agrees with Courtney, but it concludes that the error was harmless and is not an independent ground for remand.
In finding that Courtney did not meet Listing 1.02, the ALJ relied solely on the opinions of the state agency medical consultants, R. 22, therefore ignoring the *766 records regarding Courtney's knee that were submitted after those opinions were rendered. See e.g. R. 1012-13, 1015, 1093, 1168-69, 1195. Before relying on a possibly outdated assessment, the ALJ must determine if later evidence reasonably could have changed the assessment. Moreno v. Berryhill , 882 F.3d 722, 728 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018). But the ALJ did not mention the later evidence at all in her analysis.
The Commissioner contends that Moreno does not apply because the opinions of the state agency medical consultants were not as stale as the opinions in Moreno . But the issue in Moreno was not the age of the opinions, it was the existence of newer evidence in the record. 882 F.3d at 728. And because there is relevant new evidence in this case, the ALJ was required to discuss whether it affected the validity of the earlier assessments. See Plessinger v. Berryhill , 900 F.3d 909, 917 (7th Cir. 2018) (the ALJ must articulate her reasoning so that the court can determine whether she considered the pertinent evidence).
The Commissioner also contends that because Courtney was represented by counsel before the ALJ, it was his responsibility to present medical opinions that contradicted the state agency medical consultants. The Commissioner cites Buckhanon ex rel. J.J. v. Astrue , 368 F. App'x 674, 679 (7th Cir. 2010), and Skinner v. Astrue , 478 F.3d 836, 842 (7th Cir. 2007), for the proposition that "a represented claimant is assumed to have made his best case before the ALJ." Dkt. 12, at 11. But those cases do not apply here; they concern whether an ALJ has an obligation to develop the record. Here, the record is already developed-Courtney has pointed to specific evidence that makes the opinions of the state agency medical consultants outdated. So the issue is not whether the ALJ should develop the record, it is whether the ALJ's reliance upon the those opinions, and nothing else, is reasonable. Because the ALJ did not explain the effect of the new evidence on the stage agency medical consultant opinions, and therefore did not explain if the opinions are still reliable, her decision was not based on substantial evidence.
Nonetheless, the court agrees with the Commissioner that the ALJ's failure to consider the new evidence was harmless. There is no evidence in the record of ineffective ambulation, one of the requirements for listing 1.02. 20 C.F.R., Part 404, Subpt. P, App. 1, § 1.02. Although Courtney testified at his hearing that he had difficulty walking, and on appeal he points to evidence of limited mobility, none of the evidence that Courtney points to would show that he meets the definition of ineffective ambulation under 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.00(B)(2)(b).
In his reply brief, Courtney does not directly address the Commissioner's arguments regarding harmless error. Instead, he argues that the Commissioner is violating the Chenery doctrine. See Parker v. Astrue , 597 F.3d 920 (7th Cir. 2010) (agency lawyers cannot defend the ALJ's decision on grounds that the ALJ did not consider). But Courtney misunderstands the Commissioner's arguments regarding ineffective ambulation. The harmless error standard is "not ... an exercise in rationalizing the ALJ's decision and substituting our own hypothetical explanations for the ALJ's inadequate articulation." McKinzey v. Astrue , 641 F.3d 884, 892 (7th Cir. 2011). Rather, it asks the court to consider a prospective question-whether it can "say with great confidence what the ALJ would do on remand." Id. If the court is convinced that on remand the ALJ would come to the same decision, then the error is harmless. Hill v. Colvin , 807 F.3d 862, 869 (7th Cir. 2015). For listed impairments, *767 this analysis is simple: if the claimant is unable to point to evidence in the record of one of the listing's requirements, then the court assumes that the ALJ would find on remand that the listing is not met. Lloyd v. Berryhill , 682 F. App'x 491, 496 (7th Cir. 2017). Here, Courtney has not pointed to anything in the record that meets the definition of ineffective ambulation-even after the Commissioner squarely raised the issue. So any error the ALJ made when she found Courtney did not meet listing 1.02 was harmless. The ALJ's treatment of listing 1.02 does not provide an independent basis for remand.
However, if on remand Courtney can identify new evidence of ineffective ambulation, he is free to ask the ALJ to consider that evidence. And if the ALJ again decides that Courtney does not meet listing 1.02, she should do more than simply rely on the opinions of the state agency medical consultants. She must articulate what effect, if any, the newer evidence has on her analysis and whether it reasonably could have changed the earlier opinions.
ORDER
IT IS ORDERED that the decision of defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, denying plaintiff Todd Courtney's application for disability insurance benefits and supplemental security income is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The November 30, 2018 oral argument is CANCELED as unnecessary.

U.S. Department of Labor, Dictionary of Occupational Titles (4th ed. 1991)