**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 3, 2019
Decided November 12, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

AMY C. BARRETT, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-3673

| | |
|---|---|
| PAUL PYTLEWSKI,<br>    *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Western District of<br>Wisconsin. |
| *v.* | |
| | No. 17-cv-0810-slc |
| ANDREW M. SAUL,<br>Commissioner of Social Security,<br>    *Defendant-Appellee.* | Stephen L. Crocker,<br>*Magistrate Judge.* |

**O R D E R**

Paul Pytlewski, now 42, who suffers from mental impairments (anxiety, depression, and anger issues) and physical impairments (chronic back pain and pain in his neck and arms), challenged the denial of his application for Social Security disability benefits and supplemental social security income. An administrative law judge denied Pytlewski's application after finding that he lacked sufficient medical evidence that he was disabled. The district court upheld the ALJ's decision. On appeal, Pytlewski principally contends that the ALJ afforded too little weight to his treating physician's opinion about his mental impairments. Because the ALJ's decision was supported by substantial evidence, we affirm.

**I**

Pytlewski applied in mid-2015 for Title II disability insurance benefits and supplemental social security income, alleging a host of mental and physical impairments. (Because he confines this appeal to only his mental impairments, we focus mainly on those.) Pytlewski previously worked as a mortgage clerk, auto detailer, tire builder, and cleaner; his professional activities, however, were derailed by his temper and anxiety, which he says lost him at least thirty jobs in three years. In May 2015, Pytlewski ceased working because of his back and neck pain and his inability to deal with people. Two months later, he began treatment with a mental-health therapist. At intake, the therapist recorded Pytlewski's history of anxiety and depression and diagnosed him with intermittent explosive disorder.

Upon referral from the Disability Determination Bureau, consultative psychologist Dr. Steven Benish saw Pytlewski in September 2015 and diagnosed him with post-traumatic stress disorder, panic disorder, and "some symptoms" of bipolar disorder. Dr. Benish recounted that the examination was "certainly one of the more unusual" ones that he had conducted: Pytlewski was "dramatic in presentation," "acted in a quite peculiar manner," "entered without saying a word," wore dark glasses, refused to be seen without his girlfriend present, and requested frequent breaks. Regarding work capacity, Dr. Benish opined that Pytlewski could understand, recall, and carry out instructions; that his concentration and cognitive pace were average or slightly limited; that his ability to respond to supervisors or coworkers was moderately affected; and that he responded to stress with angry outbursts and "agitation." Dr. Benish posited that Pytlewski's unusual behavior, if not "partly explained" by an unspecified personality disorder, could be attributable to malingering with the intent to influence the examiner's opinion.

Between July 2016 and March 2017, Pytlewski saw psychiatrist Dr. John Whalen eight times. At an early stage of his care, in September 2016, Dr. Whalen opined that Pytlewski had a personality disorder (sociopathic traits) and a possible diagnosis of a bipolar disorder; he stated that Pytlewski's prognosis was "poor." He described Pytlewski as "probably noncompliant" with his medications and noted "some malingering for benefits from SSI." Dr. Whalen observed that Pytlewski could function in a regular, competitive work setting 8 hours per day, 5 days per week for more than 6 months, so long as Pytlewski took his medications. Dr. Whalen described Pytlewski's "potential and capacity for work" as "limited only by his motivation to continue a treatment plan." He assessed Pytlewski's functional limitations as "none-mild" in every category.

Meanwhile, the state-agency psychologists who reviewed Pytlewski's medical records found him capable of working. In September 2015, Dr. Susan Donahoo concluded that Pytlewski could "maintain[] concentration and persistence to complete workdays and workweeks in performance of simple repetitive tasks," might have "some difficulty dealing appropriately w/the general public, supervisor's [sic] and coworkers," and would have "moderate" limitations with workplace stress or adapting to change. In January 2016, Dr. Russell Phillips found that Pytlewski could "maintain[] concentration and persistence to complete workdays and workweeks in performance of simple repetitive tasks"; "maintain attention for two hours at a time and persist at simple tasks over eight- and forty-hour periods with normal supervision"; and "tolerate simple changes in routine … and make/carry out simple plans."

After the Social Security Administration twice denied benefits, Pytlewski testified at a hearing before an ALJ in late 2016 that he could no longer work because of his mental impairments and back and neck pain. He explained that he was being treated by Dr. Whalen for "Bipolar I, PTSD," he had trouble "being around others," and on about twenty occasions he had become so "frustrated" that he "walk[ed] off the job."

Six days after the hearing, in November 2016, Dr. Whalen saw Pytlewski again. This assessment differed significantly from Dr. Whalen's assessment of Pytlewski two months earlier. In September, Dr. Whalen described Pytlewski as having "none-mild" functional limitations; now, he rated Pytlewski's functional limitations as "extreme" in every category. In September, Dr. Whalen opined that Pytlewski could work full-time in a competitive setting with adherence to a treatment plan; now, he said that Pytlewski was incapable of tolerating even a "low stress" job and that his level of occupational and social impairment was "total." Dr. Whalen also recorded that Pytlewski was suffering back and neck pain and that he demonstrated some "loose associations" in his thought process. Dr. Whalen diagnosed Pytlewski with intermittent explosive disorder, bipolar disorder and multiple learning disabilities.

At Pytlewski's request and after receiving additional medical evidence (including Dr. Whalen's November 2016 report), the ALJ in May 2017 held a supplemental hearing with a new vocational expert. Asked what work would be available to a person of Pytlewski's age with his experience and limitations, the VE responded that this person would be restricted to simple, routine, and repetitive tasks; no fast-paced work; only simple work-related decisions and occasional workplace changes; and only occasional interaction with the public, coworkers, and supervisors. This person, the VE continued, would be restricted from performing Pytlewski's past

work, but could perform sedentary, unskilled jobs, such as "addressing clerk," "telephone quotation clerk," "charge-account clerk," and "inspector of film touch-up."

Applying the administration's five-step analysis, 20 C.F.R. § 404.1520(a)(4), the ALJ first determined that Pytlewski had not engaged in substantial gainful activity since his alleged onset date (Step 1). The ALJ next found that although Pytlewski's impairments were severe (Step 2), they did not meet or equal a listed impairment (Step 3). The ALJ assigned a residual functional capacity consistent with the hypothetical claimant described to the VE, (Step 3), and then found Pytlewski unable to perform any past relevant work (Step 4). Finally, the ALJ concluded that because Pytlewski could perform jobs existing nationwide in significant numbers, he was not disabled (Step 5).

For purposes of this appeal, the crucial step was the ALJ's assessment of Pytlewski's RFC, and particularly the ALJ's decision to give more weight to the state-agency psychologists' opinions than to the opinions of either Dr. Benish or Dr. Whalen. The ALJ assigned "significant weight" to the opinions of state-agency psychologists Drs. Donahoo and Phillips, finding their assessment "in line" with the RFC limitations that the VE described and the medical evidence. The ALJ assigned "some weight" to Dr. Benish's opinion; his consultative examination was "clouded" by Pytlewski's "possible factitious/malingering behaviors," but his opinion "allowed" for the assessed RFC and was consistent with the medical evidence.

The ALJ accorded the least weight to Dr. Whalen's reports. The ALJ assigned "limited weight" to the doctor's September 2016 opinion, which identified no more than mild mental and social limitations. He assigned "little weight" to Dr. Whalen's November 2016 opinion, which (1) factored in Pytlewski's back and neck impairments—ailments beyond the doctor's expertise; (2) was "entirely incompatible" with his prior opinion and gave no explanation for this incompatibility, including the doctor's prior concerns of malingering; (3) relied on Pytlewski's unsupported statement that he had lost thirty jobs in recent years; (4) conflicted with his own contemporaneous treatment notes that reflected good grooming, cooperative behavior, euthymic (tranquil) mood, normal speech, as well as good cognition, memory, judgment and reality testing; and (5) was "extreme" and "not in keeping" with other evidence that Pytlewski could tend to basic daily activities without experiencing "episodes of decompensation as shown by hospitalizations."

After the Appeals Council denied review, the district court upheld the denial of benefits. Of relevance here, the court concluded that the ALJ's reasons for assigning little weight to Dr. Whalen's second opinion were logical and supported by substantial

evidence. The court rejected Pytlewski's argument that Dr. Whalen's second opinion sought to account for new evidence of physical difficulties, stating that Dr. Whalen, a psychiatrist, "appeared merely to have credited Pytlewski's subjective reports of [back] pain," which was outside his area of specialty.

## II

On appeal, Pytlewski first generally contends that the ALJ erred by improperly giving more weight to the state-agency psychologists' opinions (Dr. Donahoo's and Dr. Phillips's) than to a treating physician's opinion (Dr. Whalen's).

Under the treating-physician rule, ALJs may assign greater weight to the opinions of treating physicians, who are more familiar with a claimant's conditions than non-treating physicians. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); 20 C.F.R. § 404.1527(d)(2). "An ALJ who does not credit [a treating source's] opinion must offer good reasons for doing so and must address the appropriate weight to give the opinion." *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016); *see also* 20 C.F.R. § 404.1527(c)(2). We review an ALJ's decision to give more weight to state-agency doctors' opinions than a treating physician's for substantial evidence. 42 U.S.C. § 405(g); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008).

Substantial evidence supports the ALJ's decision here to give more weight to the state-agency psychologists' opinions than to Dr. Whalen's. The ALJ appropriately discounted Dr. Whalen's second opinion because he found that the "extreme" assessment of Pytlewski's "total occupational and social impairment" was "entirely incompatible" with Dr. Whalen's opinion two months earlier. A reasonable person would accept the ALJ's conclusion, particularly given that Dr. Whalen's second opinion did not explain the marked change or account for his earlier concerns about Pytlewski's malingering.

Pytlewski next argues that the narrative findings from the state-agency psychologists did not include all the limitations that they marked in the checklists accompanying their reports. For example, the two state-agency psychologists wrote that Pytlewski could maintain concentration and persistence to complete workweeks performing simple repetitive tasks—even though both found him moderately limited in maintaining attention and concentration for extended periods.

This argument fails because the state physicians' checklists in fact are consistent with their narratives. Consider: in the checklist, Dr. Donahoo found that Pytlewski was

"not significantly limited" in his ability to "carry out very short and simple instructions," "sustain an ordinary routine without special supervision," and "make simple work-related decisions." These findings are consistent with Dr. Donahoo's narrative that Pytlewski is "capable of maintaining concentration and persistence to complete workdays and workweeks in performance of simple repetitive tasks." Nor are Dr. Phillips's narrative sections inconsistent with his checklist observations. For example, Dr. Phillips's narrative that Pytlewski could "maintain attention for two hours at a time and persist at simple tasks over eight- and forty-hour periods with normal supervision," is consistent with his checklist findings that Pytlewski was "not significantly limited" in his ability "to ask simple questions or request assistance" or "to maintain socially appropriate behavior," and only "moderately limited" in his ability "to interact appropriately with the general public," "to accept instructions and respond appropriately to criticism from supervisors," and "to get along with coworkers or peers without distracting them or exhibiting behavioral extremes."

Pytlewski next contends that the ALJ formulated the RFC and hypothetical question with restrictions that did not adequately account for his moderate limitations in concentration, persistence, and pace. The hypothetical that the ALJ posed to the VE contained the following mental restrictions:

- Limitation to simple, routine and repetitive tasks;
- No fast-paced work;
- Only simple, work-related decisions;
- Occasional workplace changes; and
- Occasional interaction with the public, coworkers or supervisors

Pytlewski argues that restricting him to occasional interaction with the public, coworkers, or supervisors does not adequately account for his intermittent explosive disorder—and so failed to properly orient the VE.

We see no error in the ALJ's assessment. The ALJ tied the RFC to the evidence in the record—he tailored Pytlewski's workplace setting to accommodate for Pytlewski's anxiety, depression, and anger issues by limiting his interaction with people and restricting him from making high-stakes decisions. *See Jozefyk v. Berryhill*, 923 F.3d 492, 497–98 (7th Cir. 2019). Although we often reject the idea that a hypothetical confining the claimant to "simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace," *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), such a hypothetical may be adequate when it restricts a claimant with "stress- or panic-related" limitations, as is the

case here, given Pytlewski's recurring anxiety, to low-stress work. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) (collecting cases). Pytlewski cites no evidence that his moderate limitations in concentration, persistence, and pace prevent him from completing "simple, routine and repetitive tasks" while being restrained to occasional interaction with others. *See Jozefyk*, 923 F.3d at 498. Under the substantial-evidence standard, a reasonable person would accept the ALJ's conclusion that these mental restrictions were consistent with Dr. Whalen's monthly treatment notes reflecting "good cognition, memory, insight/judgment," and, most importantly, given Pytlewski's concern regarding his intermittent explosive disorder, "cooperative behavior."

One last note. Although ultimately harmless, the ALJ engaged in circular reasoning when he evaluated the weight of medical opinions based on their consistency with the RFC assessment. The ALJ noted, for instance, that Dr. Donahoo's and Dr. Phillips's opinions were "in line" with the RFC's limitations, that Dr. Benish's assessment "generally does allow" for the assigned RFC, and that Dr. Whalen's opinion "generally allows for the work articulated" in the assigned RFC. These statements put the cart before the horse: "the determination of [RFC] must be based on the evidence"; medical opinions should not be forced into a "foregone conclusion." *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *see also Bjornson v. Astrue*, 671 F.3d 640, 644–46 (7th Cir. 2012). The RFC is constructed from medical assessments; justifying the weight of those same medical assessments by their consistency with the RFC is circular. *See* 20 C.F.R. §§ 404.1527(b), 404.1545(a)(3). This error, however, was harmless, given the ALJ's careful review of the record and tying of the RFC to the record evidence.

                                                                                                          AFFIRMED